Ladies and gentlemen, we'll take the cases in the order in which they appear on the calendar. The first case this morning is Todd v. Shankel. Counsel? Thank you, Your Honors. May it please the Court, Counsel? This is a case where a man checked into Wilcox Hospital on Kauai. He employed, according to his medical history, and went in for some endoscopies and then checked out nearly dead. A couple weeks later, was whisked over to Queens Hospital. After a doctor operated on him in Queens, he now is alive and terribly scarred from the procedure. The surgeon that operated on him at Wilcox, as this record shows, the excerpt, page 106, testified that by putting a drain into the body of his patient, it would not have been a dangerous procedure. The problem we had was with the trial courts granting summary judgment in favor of the doctor and denying summary judgment against the doctor. And the reason was because we didn't have an expert who could testify on either causation or the standard of care. We believe that we did have such an expert, being our treating physician, that we have a stipulation in the record that that individual was our expert. And given the nature of the expert's testimony, which is depositional at the behest of the defendant, our doctor was deposed by the defense. On cross-examination, our expert did opine about causation. He mentioned pressure in the abdomen can cause leakage on the operation site, and leakage, in turn, can cause infection. Given the nature of the case. Yes, Your Honor. We're getting a repeat of this. Is there a way to turn it down? Thank you. Thank you. Although that wasn't a... It's a stadium effect. That wasn't a... It is not going. I hear you. I'll try it again. Although that wasn't a... Well, to get to your point, I guess, the statement really didn't talk about causation per se. It talked about may cause and use some other similar language. Where do you say that this was his opinion that this caused your client's problem? Well, Your Honor, I don't think we have to have the magic words that a defense professional expert witness who travels around giving testimony can deliver when we're dealing with a treating position. And I think for purposes of summary judgment, all we had to do was show that there was an issue to be tried. And our doctors' hemming and hawing and inability to come out and point a finger at one of his colleagues in this very small community and not really deliver those perfect magic words that the defense seems to think we need, believe that at the point where he does say may, and he is hesitant, I think that's sufficient to pass summary judgment. Well, it seems to me, and I appreciate the problem because it's a longstanding problem with physicians not being willing to testify against each other in small communities, but Hawaii, like many states, seems to require a fairly high standard of proof with respect to both the standard of care required and causation. So what's your best case that says the standard of proof is lessened if you get a somewhat equivocal statement from a treating physician as opposed to an expert opines about the standard of care and causation specifically? I don't know if that's a – in the historical sense, Your Honor, I don't know if that would be a correct statement because I think in the historical sense our ability to come out and say, look, this doctor did in fact fall below the standard of care, and there he is seated over there in the deposition room, those magic words are developed by experts and expert witnesses testifying over many, many years in cases. We have a different situation here with a treating physician being used as an expert, and I believe that's where the fork in the road begins. How can – what standard are we going to apply in terms of magic words to a treating physician expert? And are we going to require all of those formal things and overlook the substance of his testimony, which was if it's in the history and the history shows certain risk factors, hepatitis, alcohol, and IV heroin, then he would drain. And taken together with the rest of the testimony, the failure to drain caused the infection. So I think that the view of this person as an expert who doesn't always testify as one has to be with the whole record in mind, especially for purposes of summary judgment where so much hinges on my clients not being able to get a trial based upon a doctor's inability to stand up and say, that's him over there, which would be a trial, a call for a jury trial rather than a summary judgment issue. I take it if summary judgment is reversed in this case, you're going to stand pat on your testimony. You're not going to get another expert in the case, right? Well, Your Honor, that doesn't make it easy because this doctor could recant. He could get worse for me or worse for my learned opponent on the way to trial. No, I understand. I guess my question was more directed to your intent. I gather discovery is closed, right? My position, to be very candid, would be it could only get worse for us at this point. We have what we need to proceed to trial. And I think that's my position at summary judgment. We're not here to try a case on the records and on the medical records and with magic words. We're here to see if there should be a trial. And if you look at the testimony of the original doctor, he didn't really think that the medical history was that important as far as his decision to put in a drain. But yet the next doctor that treated, who's going to be our expert, thought that that was important on my cross-examination during his deposition. So right there we have a triable issue of fact. And depending on which one carries the day, I think if those lines of testimony stay intact at trial, we may win this case if the jury believes the second doctor, who is also our expert. Your Honor, the use of the history, I think, was overlooked by the trial court as far as its importance to the standard of care. The trial court seemed to require us to have verified or sworn medical history, and that's just not what happens in a surgical theater. The best we could do was attach those documents to the record and attach them also to depositions and have them come in that way. But as I'm arguing to you today, I'm arguing in part based on the history and based on what the doctor said about it. None of this has been tested by a trial. For instance, the record, the history shows my client was employed as a small businessman and had a tattoo parlor when he went to the hospital. After his operation, the record shows he's unemployed. Even in the context of the medical record, it shows there's mention in there of him being unemployed and homeless. One can see in a period of two weeks that his life has become destroyed. And he criticizes one of the physicians for putting him that way because it was below the standard of care. And sufficient evidence for summary judgments is in the record to allow us to go forward. We have a jury could have found for us on the issue of pressure causing leakage, causing infection at our excerpt pages 49 and 51. A jury could have found for us on the use of the history as part of the standard of care and how that both doctors read the history. There's no dispute there. But how our expert would have applied the matters that were in the history significantly different from the matters that the first physician would have thought was important. He didn't think it was. The first physician didn't think it was important enough to drain and didn't think that alcohol use, IV use, or hepatitis raised significant alarms for a fairly routine, non-dangerous procedure of putting in a drain. And on this basis, I would ask that the court reverse summary judgment and respectfully grant summary judgment in favor of my client. Thank you. Please support. The burden of proof that plaintiff appellant has in cases of professional liability are to prove by medical expert testimony a breach of the standard of practice and the fact that the breach of the standard of practice was the legal cause of the plaintiff's injuries. The plaintiff has failed in this case to offer expert testimony on either of those two important points. With respect to the placement of the duodenostomy to, I think plaintiff concedes that there isn't any expert testimony from Dr. Lim indicating that the defendant breached the standard of practice. He seems to be focusing in on these other concerns that Dr. Lim mentioned and argues that the court should accept or interpret those or that testimony regarding the other concerns as if it was a breach of the standard, which it isn't. Hawaii doesn't recognize two different standards of expert testimony, depending upon whether or not the expert is retained and resides perhaps somewhere else or whether the expert is one of the patient's treating physicians. Professionals are judged by their peers, and the standard of practice applicable is the standard, in this case, applicable to a board-certified general surgeon. To meet the burden, plaintiff must offer expert testimony, not that something may have been amiss or that a surgeon should have some concerns when making clinical judgments,  because there simply has been no testimony. I don't think it was breached, but has Hawaii abandoned the locality rule with respect to the standard of care? I don't believe the Hawaii Supreme Court has officially abandoned the locality rule. In this case, Dr. Lim is a Honolulu physician, so presumably I'm not before you arguing that he's not familiar with the standard applicable to Dr. Ashanko, who practices on Kauai. I would accept the fact that he probably is. But in this case, we argue that the plaintiff has the burden of ‑‑ I understand. Can you ask me another question on the Hawaii law? I don't think it's covered by the briefs. Is the standard of causation for medical malpractice case in Hawaii a substantial contributing factor, or do they still have a proximate cause? I think it's a substantial contributing factor. And has Hawaii adopted the laws of a chance doctrine for medical malpractice cases? I don't believe they have. And counsel's argument that Dr. Lim's testimony about something may be the cause or may be related, again, doesn't meet the standard. May is a possibility, not a medical probability. And that would be the standard. Counsel didn't address the feeding tube, the rhesypsiloquiter issue. I would just submit, as we had previously, that this is not a foreign body situation, that Dr. Schenkel intentionally placed the feeding tube, and it was designed to remain in the position that it was through the stomach and into the small bowel. And the tests done at Queens Medical Center both before and after the surgery, the subsequent surgery, indicated that the tube remained in the precise place where Dr. Schenkel had placed it. The primary reason we don't believe the common knowledge exception applies is because Dr. Lim offered an alternative medical explanation for the fact that a piece of the tube was observed in the abdomen. And that alternative causation is the fact that the suture line could have come apart sometime after Dr. Schenkel's surgery. So this is not a situation in which the only reasonable explanation for the plaintiff's injuries is that the defendant was negligent. So we believe that as with the duodenostomy tube and the criticism of that, the two-day delay in placement of that, the plaintiff's argument about the placement of the feeding tube requires expert testimony. There is none, nor is there testimony that the manner in which Dr. Schenkel placed the feeding tube caused any injuries. And for those reasons, for the failure on both issues to offer testimony that there was a breach of the standard, and the failure on both issues that there was any relationship between the alleged breach and the injuries, we believe that the lower court ruling was correct. Summary judgment. The issuance of summary judgment is appropriate, and we'd ask the court to affirm that. Thank you, counsel. You have a minute to rebuttal, if you'd like. There's no requirement. Thank you. The case to its fair review will be submitted. The next case on the calendar is Scirocchi v. Cannella. Yes, please, counsel. May it please the Court, Your Honor. My name is Stephen Kim, and I represent the appellant in this case. Three years ago today, the Child Welfare Service, formerly called CPS, took away my client's children under a determination that the CPS worker, who was the defendant in this case, believed the children were in danger of being harmed. Under state law, once children are removed from a family, the state needs to do one of three things. Within three days, they need to file a petition in the court seeking to retain custody of the children. Two, they need to just return the children. Or three, they need to obtain the consent of the child's legal custodian to the continued custody in the Department of Human Services, or CPS. There is no question in this case that at the time CPS entered my client's life and removed her children from her, that her interest in having custody of her children was a clearly established right. There are two cases, one, actually it's one case, two opinions arising out of this district, construing this identical statute saying that a delay on the part of the Child Protective Service of even filing a petition for seven days, instead of at that time it was two, is now...
judges: Browning, Reinhardt, Thomas